UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL KUILAN,

    Plaintiff,

v.                                                    Case No. 8:22-cv-2603-AEP

KILOLO KIJAKAZI,

Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for a period of disability and DIB (Tr. 414-415). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 229-32, 236-51). Plaintiff then requested an

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

administrative hearing (Tr. 252). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 48-85). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 20-42). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council granted on the basis that the presiding ALJ had errored in failing to exhibit or consider fifteen pages of medical records from Orlando VA Medical Center which were received in the electronic file after Plaintiff's hearing but before the ALJ rendered his decision. (Tr. 14-17, 407-13). The Appeals Council ultimately upheld the denial of Plaintiff's claims for benefits, finding that the missing records were cumulative of other VA records in the file and agreeing with the ALJ's prior determinations of disability pursuant to 20 CFR 404.1520 (Tr. 7-11). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.     Factual Background and the ALJ's Decision

Plaintiff, who was born in 1979, began claiming disability on July 24, 2019 (Tr. 414). Plaintiff's highest level of education is the completion of a bachelor's degree in accounting from Ana G. Mendez University (Tr. 51-52). Plaintiff's past relevant work experience includes work as military police and a correction officer (Tr. 40, 55-56). Plaintiff alleged disability due to depression, anxiety, PTSD, scoliosis, thoracolumbar spine, insomnia, hearing loss, right shoulder strain, tinnitus, and sleep apnea (Tr. 503).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2023, and had not engaged in substantial gainful activity since July 24, 2019, the alleged onset date. (Tr. 29). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: knee impairment, lumbar degenerative disc disease, asthma, shoulder impairment, depressive disorder, anxiety disorder, posttraumatic stress disorder (PTSD), and schizoaffective disorder (Tr. 29). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 29). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform:

> a reduced range sedentary work as defined in 20 CFR 404.1567(a). Specifically, this hypothetical individual has a residual functional capacity to perform sedentary work, which is simple and routine. Can occasionally stoop, kneel, crouch, or crawl; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs. Should avoid exposure to hazards, such as heights or machinery with moving parts. Can frequently reach (including overhead) with the right upper extremity. Should avoid concentrated exposure to dusts, fumes, gases, odors, or poorly ventilated areas. No production rate pace work. Occasional changes in routine workplace setting. Occasional contact with co-workers, supervisors, and the general public. The hypothetical individual is likely to be off task 10% of the work period.

(Tr. 32-33). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting

effects of his alleged symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 34).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform any past relevant work (Tr. 40). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as an escort vehicle driver, document preparer, and cutter and paster (Tr. 41-42). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 42).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520,

416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of

rules that are appended to the regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope

of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

### III.

Plaintiff argues that the ALJ erred in failing to assign weight to the medical opinions of Dr. Guierrez Almodovar. For the following reasons, the ALJ applied the correct legal standard, and the ALJ's decision is supported by substantial evidence.

Plaintiff's sole argument is that the ALJ errored by failing properly evaluate the medical opinion of VA psychiatrist Dr. Ramon L. Guierrez Almodovar who evaluated Plaintiff and conducted a Post Traumatic Stress Disorder (PTSD) Disability Benefits Questionnaire. (Tr. 29). As part of his review, Dr. Guierrez Almodovar diagnosed Plaintiff with post-traumatic stress disorder which he found to be 70% disabling. (Tr. 2925-26). Dr. Guierrez Almodovar further opined that when compared to Plaintiff's 2019 study, Plaintiff presented with more severe symptoms to include: "neglect of personal appearance and hygiene; impaired judgement; memory loss; intermittent inability to [p]erform activities of daily living." (Tr. 2936). Moreover, Plaintiff was found to present with "social and occupational impairment with deficiencies in most areas." (Tr. 2936).

**A. Dr. Guierrez Almodovar's diagnoses were not a "medical opinion" as defined under 20 C.F.R. § 404.1513(a)(2).**

As Plaintiff's claim was filed after March 27, 2017, the new SSA regulations apply to how an ALJ evaluates medical opinions. *See* 20 C.F.R. § 404.1520c; *see also Simon v. Comm'r of Soc. Sec.*, No. 19-14682, 2021 WL 3556433, at *7 n.4 (11th Cir. Aug. 12, 2021) (indicating that 20 C.F.R. § 404.1527 only applies to disability claims filed before March 27, 2017, and claims filed after that date are governed by 20 C.F.R. § 404.1520(c), which prescribes a somewhat different framework for evaluating medical opinions). Under 20 C.F.R. § 404.1513(a), medical evidence is divided into five categories: 1) objective medical evidence, 2) medical opinion, 3) other medical evidence 4) evidence from nonmedical sources, and 5) prior administrative findings. A medical opinion is further defined as:

> a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).

Under 20 C.F.R. § 404.1520c, when presented with prior administrative medical findings or medical evidence qualifying as a "medical opinion" under the regulation, an ALJ is required to "consider[] a variety of factors, including but not limited to[,] whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization" and articulate on the record how such records were considered. *Coats v. Kijakazi*, No. 8:21-CV-01762-AEP, 2023 WL 2706857, at *8 (M.D. Fla. Mar. 30, 2023). However, medical evidence that cannot be categorized as a "medical opinion" under the regulations is treated differently. Though the ALJ must evaluate such evidence, the ALJ is not required to articulate any findings regarding its persuasiveness. *Id.*; *see also Dye v. Comm'r of Soc. Sec.*, No. 5:20-CV-459-NPM, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022).

Prior to the implementation of the new SSA regulations, the previous definition of medical opinion was broader. The prior regulations provided that medical opinions were statements from acceptable medical sources that reflect judgments not only about what the claimant can still do despite their impairment and the claimant's physical or mental restrictions, but also the nature and severity of the claimant's impairment, including the claimant's symptoms, diagnosis, and prognosis. 20 C.F.R. § 404.1527(a).

The Eleventh Circuit has yet to provide guidance on what qualifies as a medical opinion under the amended definition of medical opinions but as one

9

district court decision explained, examples of medical opinions include "statements from a physician that a claimant can never lift more than twenty pounds, cannot understand and follow complex instructions, cannot tolerate anything more than occasional interaction with the public, or any other comments about the extent to which a claimant can or cannot perform a work-related function." *Dye*, 2022 WL 970186, at *4.

Decisions from district courts within the Eleventh Circuit have generally held that medical findings or treatments, such as test results, prescriptions, or surgery recommendations, are not medical opinions. *See Maguire v. Saul*, No. 8:20-cv-710-T-TGW, 2021 WL 2284463, at *4 (M.D. Fla. June 4, 2021) (reasoning that medical findings are not medical opinions because they do not necessarily provide perspectives about claimant's functional abilities and limitations); *Wood v. Comm'r of Soc. Sec.*, No. 6:20-cv-963-LRH, 2021 WL 2634325, at *5 (M.D. Fla. June 25, 2021) (holding the ALJ did not err by failing to weigh opinions where a claimant pointed to nothing in the medical evidence besides medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis, "none of which constitute 'medical opinions'"); *Lucas v. Comm'r of Soc. Sec.*, No. 6:21-CV-1836 DAB, 2022 WL 2901219, at *4 (M.D. Fla. July 22, 2022) (reasoning the ALJ was not required to evaluate an ARNP's description of claimant's level of pain as "10/10" because it was not a medical opinion); *Alisa M. v. Comm'r of Soc. Sec.*, No. 1:21-CV-559-CCB, 2022 WL 16752091, at *9 (N.D. Ga. Sept. 30, 2022) (holding doctors' recommendation that claimant have surgery was not a medical opinion).

Decisions from this district have also held that general statements assessing that a claimant cannot work do not qualify as medical opinions. See *Matthews v. Comm'r of Soc. Sec.*, No. 8:22-CV-679-JSS, 2022 WL 17844054, at *10 (M.D. Fla. Dec. 22, 2022) (reasoning that because doctors' statements that claimant's depression and anxiety impacted her ability to work did not "specifically explain how Plaintiff's depression and anxiety impacted her ability to work and what Plaintiff could still do despite these impairments," the statements were not medical opinions); *Smith v. Comm'r of Soc. Sec.*, No. 5:21-CV-551-PRL, 2022 WL 17076709, at *4 (M.D. Fla. Nov. 18, 2022) (holding statements were not medical opinions where doctors "checked the box indicating that Plaintiff's narcolepsy impacted his ability to work" because the statements did not "specifically explain how narcolepsy impacted Plaintiff's ability to work and what Plaintiff could still do despite his narcolepsy").

Here, Plaintiff argues that the ALJ errored in failing to articulate how Dr. Guierrez Almodovar's report was considered as it constituted a medical opinion as defined in 20 C.F.R. § 404.1513(a)(2). In support of same, Plaintiff cites to the fact that Dr. Guierrez Almodovar found Plaintiff to suffer from PTSD, memory loss, and intrusion symptoms and further opined that Plaintiff's "PTSD symptoms described above cause clinically significant distress or impairment in social, occupational, or other important areas of functioning."

Notably, however, in his report, Dr. Guierrez Almodovar's did not opine as to what Plaintiff could still do despite Plaintiff's noted deficiencies nor did Dr.

Guierrez Almodovar opine as to whether these deficiencies affected Plaintiff's ability to preform the physical or mental aspect of work activities, preform other demands of work, or adapt to environment conditions. (Tr. 2923-2936). While Dr. Dr. Guierrez Almodovar did find Plaintiff to suffer from "social and occuipational impairment," these generalized findings, without further detail, are insufficient to constitute a medical opinion under 20 C.F.R. § 404.1513(a)(2).

### B. The ALJ did not error in failing to reference Dr. Guierrez Almodovar's report in his analysis of step three.

In his Reply, Plaintiff concedes that even if Dr. Guierrez Almodovar's report is not held to be a medical opinion under 20 C.F.R. § 404.1513(a)(2), the ALJ still errored in failing to state how Dr. Guierrez Almodovar's opinion affected his determination at step three of the SSA's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4) (2017). At step three, the ALJ is required to consider the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant has an impairment or combination of impairments that meets or equals one of the listings in the accompanying appendix to the regulation and meets the duration requirement, the claimant will be found to be disabled. *Id.* Plaintiff specifically takes issue with the ALJ's finding that:

> The medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairments, individually or in combination. . . . No subsequent evidence has been submitted that would alter the previous conclusions that the claimant has no impairments severe enough to meet or equal a listing.

12

Doc. 14 at 2 (quoting Tr. 29). Plaintiff argues that Dr. Guierrez Almodovar's report constituted an acceptable medical source which listed findings sufficient in severity to establish a finding of disability under Table 12.15. However, as previously indicated, an ALJ is only required to comment on the persuasiveness of *medical opinions* not general medical evidence. *See* 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions . . . in your case record."). Here, Dr. Guierrez Almodovar's report merely constituted medical evidence which the ALJ need only *consider*. *See Dye*, 2022 WL 970186 at *4 (holding that because a letter from Plaintiff's treating physician was not a medical opinion "the ALJ was not required to assess anything in [the] letter for its persuasiveness or offer any reason for not finding its contents persuasive."). Moreover, "findings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether [the claimant is] disabled" are "inherently neither valuable nor persuasive." 20 C.F.R. § 416.920b(c)(2). Accordingly, an ALJ "will not provide any analysis about how we considered such evidence in our determination or decision, even under § 416.920c." *Id.*; *see also Koehler v. Comm'r of Soc. Sec.*, No. 2:22-CV-210-JES-KCD, 2022 WL 18672970 (M.D. Fla. Nov. 10, 2022), *report and recommendation adopted*, *Koehler v. Kijakazi*, No. 2:22-CV-210-JES-KCD, 2023 WL 1098234 (M.D. Fla. Jan. 30, 2023).

Though Plaintiff suggests that the ALJ failed to properly consider the contents of Dr. Guierrez Almodovar's report, there is no objective evidence in the

13

record to support same. In his decision, the ALJ notes that "careful consideration of the entire record" was made. (Tr. 32). Included within this record is Dr. Guierrez Almodovar's report which was provided to the ALJ as part of Plaintiff's medical records from the Orlando VA Medical Center. (Tr. 47, 2923-2936). Notably, within his decision, the ALJ cites to the pages Dr. Guierrez Almodovar's report multiple times and notates several findings, thus clearly evidencing that its contents were considered. (Tr. 32, 35, 37). Furthermore, despite Plaintiff's contentions, the Commissioner cites directly to Dr. Guierrez Almodovar's report in laying the foundation for his finding that Plaintiff's medical impairments "do not meet or medically equal the criteria of listings 12.03, 12.04, 12.06, 12.11, and 12.15." (Tr. 30, 32).

As previously established, "[a] determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards." *Tyler v. Kijakazi*, No. 8:21-CV-2992-AEP, 2023 WL 2570049 (M.D. Fla. Mar. 20, 2023); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Moreover, "[u]nder substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion." Here, Plaintiff has failed to do so. While Plaintiff cites to Dr. Guierrez Almodovar's report as a basis for establishing disability under Table 12.15, Plaintiff does not address the evidence the Commissioner used in determining that Plaintiff did not meet the criteria for establishment of a disability under 12.15. Upon review,

the Commissioner's decision is supported by substantial evidence. (Tr. 29-32). This Court will not reweigh evidence or substitute its judgment for that of the Commissioner. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 27th day of December, 2023.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record